**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**CHARLES LITTLE**                                                                 **PLAINTIFF**

**v.**                                                 **Civil Action No.: 3:16-cv-00022-MPM-RP**

**REYNOLDS AMERICAN INC.**                                                **DEFENDANT**

<u>**ORDER**</u>

This cause comes before the Court on defendant Reynolds American Inc.'s ("RAI")

*Motion for Summary Judgment* [12].  Plaintiff Charles Little ("Little") filed a response in

opposition to the motion, to which RAI filed a reply.  Having given due consideration to the

submissions of the parties, along with relevant case law and evidence, the Court is now prepared

to rule.

**I.        Relevant Factual and Procedural Background**

Charles Little began working at Lorillard Tobacco Company in June 1977.  As part of his

employment, Little participated in the Retirement Plan for Employees of Lorillard Tobacco

Company ("the Plan").  After working with the company for over twenty-nine years, Little

retired on November 1, 2006.  At the time of his retirement, Little was married to his wife,

Suzanne Little.

Prior to his retirement, on April 30, 2006, Little completed an "Early Retirement Program

Election" form, indicating that he wished to participate in the company's early retirement

program.  In accordance with the terms of the Plan, Little was later presented with a company

form entitled "Election of Retirement Income Option" and instructed to complete it.  As its name

suggests, the form provides retiring employees an opportunity to select his or her desired option

for retirement benefits.  Under the Plan, Little had four different options for retirement benefits.

The form listed the four options, along with a brief description of each and the amount of payment Little would receive under each option. The four options were:

> **Option 1: Life Annuity Option**- "A monthly retirement income payable for my lifetime, with all the payments ceasing at my death." The listed amount was $1,994.01/month.
> **Option 2: 100% Joint and Survivor Option**- "A reduced monthly retirement income payable for my lifetime, with the same amount payable to the joint annuitant named below." The listed amount was $1,575.27/month.
> **Option 3: 50% Joint and Survivor Option**- "A reduced monthly retirement income payable for my lifetime, with one-half of that amount payable after my death to the joint annuitant named below." The listed amount was $1,754.73/month.
> **Option 4: Ten Year Certain Option**- "A reduced monthly retirement income payable for my lifetime, with the provision that, if I die within ten years after my retirement, the pension will continue to be paid to my beneficiary named below for the remainder of the ten year period." The listed amount was $1,934.19/month.

Although he disputes that he actually made the selection, the form submitted by Little on September 15, 2006, containing his signature appears to select Option 2, as there is an "X" beside that option and it is circled. However, Little left blank the sections of the form for "Designation of Joint Annuitant or Beneficiary under Option 2, 3, or 4" and "Designation of Beneficiary for the Lump Sum Death Benefit paid from the Pension Plan." Lorillard later returned the form to Little due to his failure to list a beneficiary for the lump sum death benefit. Accordingly, Little completed that section of the form, listing his wife as the beneficiary. However, Little still did not complete the section for "Designation of Joint Annuitant or Beneficiary under Option 2, 3, or 4."

After his retirement, Little began receiving $1,575.27 per month—the proper amount under Option 2. On March 25, 2015, Little and his wife divorced. At some point thereafter, Little contacted Lorillard to inquire about removing his wife as the beneficiary. However, he alleges that he was informed that his election was irrevocable and "[learned] that he should have

been getting a monthly payment of $1,754.73 under Option 3, the 50% Joint and Survivor Option, instead of the $1,575.27 he had been receiving under Option 2."

Thereafter, on May 4, 2015, Little filed a claim for benefits with the company, arguing that he did not designate a joint annuitant or beneficiary on his election form and, thus, his form was void and he should have been placed in the default Option 3 category, which provided a larger monthly payment. In pertinent part, the Plan provides that "if the participant's spouse shall survive the participant, a retirement allowance shall be payable under the Plan to the participant's surviving spouse during the surviving spouse's remaining lifetime after the participant's death, in an amount equal to 50% (or such higher percentage, not in excess of 100%, as the participant shall have specified on the appropriate form submitted to the Retirement Committee in connection with the Participant's claim for benefits)[.]" Little relies on this language for the assertion that the 50% Joint and Survivor Option—Option 3—was the default option. Therefore, he argues that because the election form he completed was void, he should have been placed in the Option 3 default category.

In June 2015, Lorillard merged with RAI, and RAI assumed the role of sponsor of the Plan. On August 25, 2015, ITG Brands, LLC ("ITG"), a company that was at the time handling transitional services under the Plan following the RAI and Lorillard merger, provided Little with a response to his claim, stating that it was being denied because his selection of Option 2 was irrevocable and his failure to list his wife as the joint annuitant did not render his selection of Option 2 void. In pertinent part, the denial letter stated:

> While he did not complete the name of the joint annuitant on the form, Section 4.06(a) of the Plan, in accordance with the requirements of Sections 401(a)(11) and 417 of the Internal Revenue Code, requires that a married participant's normal form of benefit must be a joint and 50% survivor annuity with the spouse as the joint annuitant. This requirement may be met by a participant's election of any other form of joint and survivor annuity of at least 50%, but no more than

100%.  If the participant and spouse wish to elect another form of benefit offered under the Plan, the spouse must consent in writing, specifically acknowledging the effect of such consent[.]

Thus, the company found that even though Little failed to designate a beneficiary, his wife was required to be the joint annuitant under the terms of the Plan and the Internal Revenue Code, and his claim was therefore rejected.

On October 8, 2015, Little appealed the denial of his claim to the RAI Employee Benefits Committee ("the Committee").  On December 2, 2015, Constantine Tsipis—secretary for the Committee—issued a letter to Little informing him that his appeal had been denied by the Committee.  In pertinent part, the letter provided:

The Committee determined that the Election Form shows Mr. Little's election of the 100% Joint and Survivor Option by virtue of the "X" marked in the box beside the option as well as by the circle drawn around "Option 2."  Further, the Committee noted that the complete of the blanks at the bottom of the Election Form designating the joint annuitant was not necessary because the joint annuitant's identity was clearly stated at the top of the Election Form before the optional forms and their respective monthly benefit amount were set forth, as follows: "The following option amounts are based upon retirement as of 11/1/2006 and using a birthdate of: [redacted] for SUZANNE LITTLE as beneficiary."  In the middle of the Election Form, a highlighted paragraph reads, in part: "If Option 2 or 3 is selected, you must submit a birth certificate or any proof of age of your designated beneficiary."  The birth certificate of Suzanne Little was subsequently provided, as evidenced by its inclusion in the Plan's records along with the Election Form, further certifying Suzanne Little as the joint annuitant for the selected option. . . Mr. Little's Election Form was not insufficient for failure to designate a joint annuitant at the bottom thereof because that Election Form, which Mr. Little signed, included the name of the joint annuitant (i.e. his spouse) at the top of the Form.

Having exhausted his administrative remedies, Little filed suit in this Court on January, 26, 2016.  In his complaint, he asserts that he is entitled to relief under the Employee Retirement Income Security Act of 1974 ("ERISA").  He also avers that "[t]he actions of Defendant [were] part of a negligent, or alternatively, an intentional course of corporate conduct conceived and calculated by Defendant to enhance the profitability of or retention of funds by Defendant at the

expense of the Plaintiff and other retirees." As to damages, Little requests the difference in the payments he would have received under Option 3 and the payments he did receive under Option 2—$179.46/month—since he began receiving the benefits. He also requests that additional amount for each month for the remainder of his life.

As stated above, RAI filed a motion for summary judgment. Little responded to the motion, and RAI filed a reply. Upon due consideration of the parties' briefs, along with relevant authorities, evidence, and the administrative record, the Court finds that RAI's motion is due to be granted.

## II.     Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets its initial burden of showing that no genuine dispute of material fact exists, the nonmoving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). At this stage, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001).

### III. Discussion

As an initial matter, the Court notes that an abuse of discretion standard of review is applicable as to the Committee's factual determinations, as well as its construction of the terms of the Plan. For factual determinations made by an ERISA plan administrator, the Fifth Circuit and this Court have made clear that an abuse of discretion standard applies. *See Menchaca v. CNA Group Life Assur. Co.*, 331 F. App'x 298, 302 (5th Cir. 2009) ("A plan administrator's factual determinations are reviewed for abuse of discretion."); *LaValley v. UnumProvident Corp.*, 2006 WL 1975998, at *1 (N.D. Miss. July 12, 2006) ("[T]his Court must review all factual determinations by the plan administrator under an abuse of discretion standard."). "In this context, the abuse of discretion standard is satisfied when there is 'concrete evidence' to support the plan administrator's decision or there is a 'rational connection' between the evidence in the record and the final decision." *LaValley*, 2006 WL 1975998, at *1 (citing *Vega v. Nat'l Life Ins. Co.*, 188 F.3d 287 (5th Cir. 1999) (en banc); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)). Relying on this authority, the Court will apply an abuse of discretion standard to factual determinations made by the Plan administrator.

As to construction of the Plan's terms, this Court has held that "[d]e novo review applies only to the plan administrator's construction of the meaning of the plan terms or the benefit entitlement provisions, and even then, only where the plan administrator lacks discretionary authority in those areas." *Id.* In *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004), the Fifth Circuit stated that "a plan administrator's factual determinations are always reviewed for abuse of discretion; but its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary

authority in that respect, and if there is such then review of those decisions is also for abuse of discretion."

Here, the Plan specifically states, in pertinent part: "The Retirement Committee shall have uncontrolled discretionery [sic] authority to interpret the Plan and a determination of the Retirement Committee as to any disputed question shall be conclusive." Thus, the Plan expressly grants the Committee discretionary authority as to the interpretation of the Plan's terms. "A grant of discretionary authority that contemplates interpreting plan terms in an absolute manner is sufficient to invoke the abuse of discretion standard." *Boulet v. Fluor Corp.*, 2005 WL 2860993, at *3 (S.D. Tex. Oct. 31, 2005) (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir. 1992)). Because the terms of the Plan provide the Committee the authority to conclusively interpret the terms of the Plan, an abuse of discretion standard is applicable.

The Court now turns to RAI's arguments in favor of summary judgment. In its motion, RAI first asserts that because this case is governed by ERISA, Little's state law claims are preempted. The Fifth Circuit has held that "[s]tate law causes of action . . . are barred by [ERISA] if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995) (citing 29 U.S.C. § 1144(a); *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994)). Moreover, "[t]he language of the ERISA preemption clause is deliberately expansive, and has been construed broadly by federal courts." *Id.* (citing *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1328-29 (5th Cir. 1992)). This Court has previously

held that in a dispute concerning an ERISA plan, the plaintiff is barred from bringing state law claims. *Price v. Metro. Life Ins. Co.*, 2006 WL 1601759, at *2 (N.D. Miss. June 7, 2006) ("The Court finds that the plan at issue in the case at bar is an ERISA plan, and that as such, all of the plaintiff's state law claims [for gross negligence, fraudulent inducement, misrepresentations, breach of contract, fraud, bad faith post-claim underwriting, bad faith refusal to investigate a claim and bad faith denial of a claim] are preempted and her claim effectively becomes a federal one.").

Although Little's counsel has presented this Court with a learned exposition of the law, the Court finds RAI's preemption arguments persuasive. Little's state law claims concern his right to receive benefits and directly affect the relationship between "traditional ERISA entities," namely RAI—the employer, Little—the participant, and Suzanne Little—the beneficiary. Thus, both requirements articulated by the Fifth Circuit in *Hubbard* for ERISA preemption are satisfied here. Therefore, the Court finds that Little's state law claims are barred. Summary judgment is proper as to those claims.

As to his ERISA claims, Little asserts that he has been underpaid every month because he was erroneously placed in the Option 2 category, rather than Option 3. In its motion, RAI asserts that the basis of Little's argument is without merit because he selected Option 2 on his election form and his failure to designate a joint annuitant or beneficiary did not make the selection invalid because, since he was married, his wife was required to be the joint annuitant or beneficiary under the applicable law. In response, Little makes two arguments. First, he argues that he did not select Option 2. In support of this position, he states that "[w]hen we consider the mark plaintiff used 4-30-06 to indicate election of early retirement, a backward check mark, and contrast that with the circle and X on the Election of Retirement Income Option form made on 9-

15-06 we are compelled to notice that the election marks on the forms were markedly different and likely made by different persons.  The red flag should have triggered more scrutiny and action by the plan administrator."  Second, Little argues that "[e]ven if plaintiff did elect Option 2, there is no one designated as Joint Annuitant or Beneficiary of his retirement benefits and as a matter of law that should void the election."  For the reasons stated hereinafter, the Court finds that both arguments should be rejected.

As to the first argument, the Court notes that Little essentially asserts a fact question—specifically, that because he used a backwards check mark to indicate his selection in the early retirement form, the selection on the election form made with an "X" could not have been made by him.  The Court finds this argument has no merit.  Little has provided no evidence to support the assertion that he did not fill in the form.  Rather, he makes only accusatory statements, such as "[t]he Plan had an incentive to conclude that Option 2 was selected by the plaintiff even though Option 3 is the default option[.]"  However, other than emphasizing a potential incentive to provide less payment and the use of a different symbol to indicate his selection on two different documents completed five months apart, Little has done nothing to prove the truth of his assertions.  Put succinctly, he has provided no evidence that any wrongdoing occurred.

The Court notes that a nonmovant cannot overcome summary judgment with "conclusory allegations" or "unsubstantiated assertions," or by only a "scintilla" of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).  Little's emphasis on the use of different symbols to indicate his selection on documents completed over five months apart strikes this Court as nothing more than an "unsubstantiated assertion."  In this Court's view, an individual could quite certainly use a different symbol to indicate his selection when filling out different documents, especially considering the large amount of time—nearly five

months— between completing the forms.  In addition, the Court also highlights that the standard of review for this issue is abuse of discretion.  Put simply, Little has not shown that the Committee abused its discretion in making its determination that he made the selection indicating Option 2 on the election form.  Accordingly, this argument is rejected.

As to his second argument, Little avers that his failure to designate a joint annuitant or beneficiary makes his election form invalid and, thus, entitles him to placement in the Option 3 default category.  Regarding RAI's conduct, Little asserts that "it was legally impermissible for the defendant to engage in speculation and arbitrarily or capriciously conclude that the plaintiff had designated his spouse as Joint Annuitant or Beneficiary of his retirement benefits and that plaintiff had elected Option 2."  As with Little's first argument, the Court is unpersuaded.

In pertinent part, Section 4.06(a) of the Plan provides that "if the participant's spouse shall survive the participant, a retirement allowance *shall* be payable under the Plan to the participant's surviving spouse during the surviving spouse's remaining lifetime[.]" (emphasis added).  Thus, according to the language of the Plan, an allowance must be paid to any participant's surviving spouse.  Because Little was married at the time of his retirement, he was required to have his wife as the joint annuitant or beneficiary.

However, Section 4.06(a)(ii) does provide an avenue to waive the surviving spouse allowance, specifically stating that "[a] participant may elect, during the election period specified below, to waive the surviving spouse retirement allowance form. . . An election to waive shall not take effect unless the participant's spouse gives written consent on a form provided by the Retirement Committee for such purpose, which consent acknowledges the effect of the election to waive, and which written consent is witnessed by a notary public."  Thus, it was possible under the Plan to waive the surviving spouse benefits.  But to do so, Suzanne Little would have

had to complete a notarized form waiving her right to the benefits. However, it is undisputed that no waiver was executed. Thus, Suzanne Little remained the required joint annuitant or beneficiary.

Ultimately, the language of the Plan provides that a participant's surviving spouse is entitled to receive the benefits of at least 50% and up to 100% upon the selection of the participant. Little completed the entire portion of the election form other than designating a beneficiary. However, he did provide his wife's birth certificate and his wife's name was listed on the top of the form at the time he completed it. The letter Little received from RAI clearly cited the fact that it had received Suzanne Little's birth certificate and the listing of her name on the top of the form as the basis for its conclusion that Little's failure to complete the "Designation of Joint Annuitant or Benficiary" portion of the form did not result in his election void becoming invalid. As stated above, "the abuse of discretion standard is satisfied when there is 'concrete evidence' to support the plan administrator's decision or there is a 'rational connection' between the evidence in the record and the final decision." *LaValley*, 2006 WL 1975998, at *1 (additional citations omitted). In this Court's view, there was a "rational connection" between the evidence in the record and the Committee's final determination that Little's failure to specifically list his wife's name as the joint annuitant or beneficiary did not render his selection void. Consequently, the Court finds that the Committee did not abuse its discretion. Summary judgment should be granted.

### IV.   Conclusion

For the foregoing reasons, the Court concludes that summary judgment is proper.

Accordingly, it is hereby, ORDERED that RAI's *Motion for Summary Judgment* [12] is

GRANTED.  A separate judgment will be entered on this date, pursuant to Federal Rule of Civil

Procedure 58.

SO ORDERED this the 9th day of January, 2017.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**